# ORIGINAL

ELIZABETH C. BRENNAN
Email: ebrennan@cftc.gov
STEVEN I. RINGER
Email: sringer@cftc.gov

Attorneys for Plaintiff
U.S. Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, NY 10005
Telephone:   (646) 746-9747 (Brennan)
             (646) 746-9760 (Ringer)
Facsimile:   (646) 746-9939

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 15 2010

at $l\rho$ o'clock and $\emptyset 6$ min. $\forall$ M.
SUE BEITIA, CLERK

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK RAKOTONANAHARY, and CYBER MARKET GROUP, LLC,<br><br>Defendants. | Civil Action No.<br>CV10 00144 KSC<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF ;**<br>SUMMONS IN A CIVIL ACTION |

1

Plaintiff U.S. Commodity Futures Trading Commission ("Commission") alleges as follows:

## I.   <u>SUMMARY</u>

1.   Since at least June 18, 2008, and continuing through the present ("Relevant Period"), defendants Patrick Rakotonanahary ("Rakotonanahary") and Cyber Market Group LLC ("Cyber") (collectively, "Defendants") directly and through their officers, employees and agents, have fraudulently solicited money from members of the general public for the purpose of trading off-exchange foreign currency contracts ("forex").

2.   Proposed Defendants offered a "Promissory Program" in which Cyber clients loaned funds to Cyber and Defendants, in turn, used Cyber clients' funds to trade forex.  Cyber clients were told that they would accrue interest on their loans that would be paid from Cyber's purported successful forex trading.

3.   In soliciting prospective clients, Defendants, directly and through others, made the following fraudulent misrepresentations and omissions, among others:  (a) promising weekly and/or monthly returns of from 4 to 10%, knowing that they lacked the funds to make these payments; (b) falsely representing to clients that these returns were based on profitable forex trading; (c) failing to inform clients that their returns were paid from the client's own funds and/or the

2

funds deposited by other clients; (d) falsely claiming that they had not lost money trading forex in seven years; and (e) failing adequately to disclose the risks of trading forex.

4.    Upon information and belief, Defendants operated a "Ponzi' scheme by paying so-called returns to clients with those clients' own money or the money of other clients.  In doing so, Defendants misappropriated funds.

5.    Defendants also misappropriated client funds for personal use.

6.    Proposed Defendants distributed statements to clients that falsely stated that Cyber had client funds totaling in excess of $8 million.

7.    By virtue of this conduct and the further conduct described herein, Defendants have engaged, are engaging, or are about to engage in acts and practices in violation of the anti-fraud provisions of Sections 4b(a)(2)(A)-(C) of the Commodity Exchange Act ("CEA" or "Act") as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), § 13102, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C)).

8.    Rakotonanahary is liable under Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006), as a controlling person of Cyber for its violations of the Act,

because he did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations.

9.   Rakotonanahary and other Cyber employees, officers and agents committed the acts alleged herein within the course and scope of their employment, office or agency at Cyber.  Therefore, Cyber is liable pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Commission Regulation ("Regulation") 1.2, 17 C.F.R. § 1.2 (2009), as a principal for its employees', agents', and/or officers' violation of the Act.

10.  Accordingly, pursuant to Sections 6c(a) and 6d of the Act, 7 U.S.C. §§ 13a-1, 13a-2 (2006), and Section 2(c)(2)(C)(i)-(iii) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(i)-(iii), the Commission brings this action to enjoin the unlawful acts and practices of Defendants, to compel their compliance with the provisions of the Act, and to enjoin them from engaging in certain commodity related activities.  In addition, Plaintiff seeks both preliminary and permanent injunctive relief, civil monetary penalties and remedial ancillary relief including, but not limited to, trading and registration bans, restitution, disgorgement, pre- and post-judgment interest, and such other equitable relief as the Court may deem necessary or appropriate.

4

11.   Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.

## JURISDICTION AND VENUE

12.   Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2006), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

13.   This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2006).

14.   Section 2(c)(2)(C)(i)-(iii) of the Act as amended by CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(i)-(iii), provides jurisdiction to the Commission and makes the Act applicable to certain forex transactions.

15.   Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), in that the Defendants transact business in this District, and certain of the transactions, acts practices, and courses of business alleged occurred, are occurring, or are about to occur in this District.

## III.

## THE PARTIES

**A.    Plaintiff**

16.   The U.S. Commodity Futures Trading Commission is an independent

federal regulatory agency that is charged by Congress with responsibility for

administering and enforcing the provisions of the Act as amended by the CRA, to

be codified at 7 U.S.C. §§ 1 et seq. (2006), and the Regulations promulgated

thereunder, 17 C.F.R. §§ 1.1 et seq. (2009).

**B.    Defendants**

17.   Cyber Market Group LLC is a Florida limited liability company,

formed in January 2005 and actively registered to do business in Florida.  Cyber

operates out of Punta Gorda, Florida.  Cyber has never been registered with the

Commission in any capacity and is not a member of a futures association registered

under the Act.  Cyber is not a financial institution, registered broker dealer,

insurance company, financial holding company, or investment bank holding

company, and is not an associated person of such entities.  Upon information and

belief, Cyber is not an "eligible contract participant" and at least some, if not all, of

Cyber's clients are not "eligible contract participants," as that term is defined in the

Act.  *See* Section 1a(12)(A)(xi) of the Act, 7 U.S.C. § 1a(12)(A)(xi) (2006) (an

"eligible contract participant," as relevant here, is an entity that has total assets exceeding $10 million or an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be incurred, by the individual").

18.  <u>Patrick Rakotonanahary</u> is an individual who maintains an address in Punta Gorda, Florida.  Rakotonanahary holds himself out as the President of Cyber.  Rakotonanahary is not a financial institution, registered broker dealer, insurance company, financial holding company, or investment bank holding company, and is not an associated person of such entities.  Rakotonanahary has never been registered with the Commission in any capacity and is not a member of a futures association registered under the Act.

## IV.

## <u>FACTS</u>

### Defendants Fraudulently Solicited Individuals to <u>Trade Foreign Currency Contracts</u>

19.  During the Relevant Period, Defendants, directly and through their officers, employees and agents, fraudulently solicited members of the general public for the purported purpose of trading off-exchange forex.

20. Defendants, directly and through others, solicited individuals through direct solicitations, word-of-mouth, and a written solicitation.

21. Rakotonanahary is Cyber's President and Chief Executive Officer. Rakotonanahary solicited a number of clients directly and through others, executed agreements with clients in the name of Cyber, communicated with Cyber clients concerning their investments and redemptions requests, and controlled Cyber's bank account.

22. Rakotonanahary not only knows of the fraud being perpetrated by Cyber, he is running the fraudulent operation.

23. In meetings with prospective clients, Rakotonanahary and others explained that Defendants offered a "Promissory Program" in which Cyber clients would loan funds to Cyber and that Defendants would use those funds to trade forex.

24. Cyber clients executed "loan agreements" with Rakotonanahary and Rakotonanahary signed the agreements on behalf of Cyber.

25. Cyber clients were instructed to send their investment funds via wire to Cyber's bank account.

26. Defendants also promised to return to Cyber clients their principal investments after 52 weeks of interest payments and represented to Cyber clients

that they could request repayment of their principal at any time prior to the 52-week period.

27.   Among other things, Defendants knowingly made the following misrepresentations of material facts while soliciting members of the general public:

- Promising weekly and/or monthly returns of from 4 to 10% knowing that they lacked the funds to make these payments and to repay principal;

- Representing to Cyber clients that these returns were based on Cyber's profitable forex trading;

- Claiming that Cyber had never lost any capital except for "one [period] seven years ago when developing our current system."

28.   For example, Rakotonanahary told at least one prospective client that he had developed a forex trading system that had never lost money and that he was able to produce between 6 and 10% weekly returns for Cyber clients using his proprietary system.  This statement was false.

29.   Among other things, Defendants also failed to disclose to prospective and existing Cyber clients:

- That Defendants lacked sufficient funds to pay clients 4 to 10%;

- That the "interest payments" provided by Cyber to clients came from Cyber clients' investments and not from Cyber's forex trading;

- The risks of trading forex; and

- Cyber's forex trading losses.

30.   Rakotonanahary has admitted that his representations to Cyber clients regarding his forex trading program were both embellished and exaggerated.

31.   In or about August 2008, Defendants ceased making purported "interest payments" to a number of Cyber clients that had invested with Cyber up to that point; thereafter, Defendants made purported partial repayments of principal to some Cyber clients, but not others.

32.   From August 2008 to the present, Defendants continued to solicit funds from members of the general public for the purpose of forex trading.

33.   Most Cyber clients have not been repaid their total principal investments despite repeated demands to Defendants to do so and such clients' entitlement to repayment.

34.   Defendants sent Cyber clients a letter dated November 26, 2008 and an attachment in which Defendants represented that Cyber's forex margin account contained Cyber client funds totaling in excess of $8 million dollars.

35.  This statement was false because, as of November 26, 2008, Defendants' bank and trading accounts had a total balance of approximately $60,000.

36.  Cyber clients relied upon the misrepresentations and omissions described herein in deciding to invest, reinvest and remain invested with Defendants.

37.  Rakotonanahary opened two checking accounts in the name of Cyber for which Rakotonanahary and two Cyber employees had signatory authority.

38.  Between December 2007 and the present, millions of dollars in Cyber client funds have been wired into one of Cyber's two bank accounts.

39.  Defendants wired all "interest payments" to Cyber clients from that same Cyber bank account.

40.  As of February 12, 2010, no funds remained in either of Cyber's bank accounts.

41.  Rakotonanahary opened multiple forex trading accounts in the name of Cyber at a futures commission merchant ("FCM") registered with the Commission.

42.  Cyber's opening account documents at the FCM state that the forex transactions are leveraged and margined.

43. Between January 2008 and the present, a total of approximately $1,864,000 was transferred from Cyber's bank account into Cyber's forex trading accounts.

44. Funds deposited into Cyber's forex trading accounts came from funds deposited by Cyber clients into Cyber's bank account.

45. Of those funds, approximately $814,806 was lost trading forex and approximately $1,049,193 was transferred back to Cyber's bank account.

46. Cyber's trading accounts traded various currency pairs, including Euro/U.S. dollar, U.S. dollar/Japanese yen, and U.S. dollar/Canadian dollar.

47. Neither Defendants nor the FCM are financial institutions, registered broker dealers, insurance companies, financial holding company, or investment bank holding company, and are not an associated person of such an entity.

48. Cyber's trading accounts were closed in or about October 2009 and no funds remain in those accounts.

49. Cyber's forex trading accounts have traded forex for or on behalf of Cyber's clients from January 2008 to October 2009 with the exception of February 2009, when there was no forex trading activity.

50. The Defendants traded forex on a margined or leveraged basis in Cyber's forex trading accounts.

51. The forex transactions conducted by Defendants in Cyber's forex trading accounts neither resulted in delivery within two days nor created an enforceable obligation to deliver between a seller and a buyer that had the ability to deliver and accept delivery, respectively, in connection with their lines of business. Rather, these forex contracts were offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

52. Defendants misappropriated Cyber client funds by using Cyber client funds to pay earlier clients' purported "interest payments" and by using Cyber client funds for personal expenses and items without clients' authorization to do so.

### V.

### VIOLATIONS OF THE COMMODITY EXCHANGE ACT
### COUNT ONE

### VIOLATIONS OF SECTIONS 4b(a)(2)(A)-(C)
### AS AMENDED BY THE CRA:
### FRAUD, MISAPPROPRIATION AND FALSE STATEMENTS
### IN CONNECTION WITH OFF-EXCHANGE FOREX TRANSACTIONS

53. Paragraphs 1 through 52 are re-alleged and incorporated herein.

54. Sections 4b(a)(2)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C), make it unlawful

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of section 5a(g), that is made, or to be

13

made, for or on behalf of, or with, any other person, other than
on or subject to the rules of a designated contract market – (A)
to cheat or defraud or attempt to cheat or defraud the other
person;  (B) willfully to make or cause to be made to the other
person any false report or statement or willfully to enter or
cause to be entered for the other person any false record; [or]
(C) willfully to deceive or attempt to deceive the other person
by any means whatsoever in regard to any order or contract or
the disposition or execution of any order or contract, or in
regard to any act of agency performed, with respect to any order
or contract for or, in the case of paragraph (2), with the other
person.

55.    Sections 4b(a)(2)(A)-(C) of the Act as amended by the CRA apply to

Defendants' forex transactions, agreements or contracts.  Section 2(c)(2)(C)(iv) of

the Act as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iv).

56.    By the conduct alleged herein, Defendants cheated or defrauded or

attempted to cheat or defraud other persons and willfully deceived or attempted to

deceive other persons in connection with offering of, or entering into the margined

or leveraged foreign currency transactions alleged herein, for or on behalf of such

persons, by fraudulently soliciting prospective and existing clients, by making

material misrepresentations and omissions, including but not limited to, promising

weekly and/or monthly returns of from 4 to 10%, knowing that they lacked the

funds to make these payments, falsely representing to clients that these returns

were based on profitable forex trading, failing to inform clients that their returns

were paid from the client's own funds and/or the funds deposited by other clients,

falsely claiming that they had not lost money trading forex in seven years, and failing to adequately disclose the risks of trading forex, all in violation of Sections 4b(a)(2)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A) and (C).

57. As set forth above, in or in connection with margined or leveraged foreign currency contracts, transactions or agreements made or to be made, for or on behalf of other persons, Defendants willfully made or caused to be made false reports or statements to clients or prospective clients by, among other things, knowingly providing clients fraudulent statements that misrepresented the balance of clients' funds, in violation of Section 4b(a)(2)(B) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(2)(B).

58. Defendants engaged in the acts and practices described above knowingly, willfully or with reckless disregard for the truth.

59. Rakotonanahary controlled Cyber, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Cyber's violations alleged in this Court. Rakotonanahary is thereby liable for Cyber's violations of Sections 4b(a)(2)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C), as a controlling person, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006).

60.  Rakotonanahary was acting as an agent of Cyber when he violated the act, and, therefore, Cyber, as Rakotonanahary's principal, is liable for Rakotonanahary's acts constituting violations of Sections 4b(a)(2)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. § 1.2 (2009).

61.  Each act of fraudulent solicitation and misappropriation, including but not limited to those specifically alleged herein, is alleged as separate and distinct violations of Sections 4b(a)(2)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C).

## VI.

## **RELIEF REQUESTED**

WHEREFORE, the Plaintiffs respectfully request that this Court, as authorized by Section 6c of the CEA, 7 U.S.C. § 13a-1 (2006), and pursuant to its own equitable powers enter

> a)  an order finding the Defendants violated Sections 4b(a)(2)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C);

16

b) an order of preliminary injunction prohibiting the Defendants from engaging in conduct violative of Sections 4b(a)(2)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C);

c) an order of permanent injunction enjoining Defendants and all persons insofar as they are acting in the capacity of their agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with them who receive actual notice of such order by personal service or otherwise, from engaging, directly or indirectly:

1.  in conduct in violation of Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C);

2.  trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006);

3.  entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R.

§ 32.1(b)(1) (2009)) ("commodity options"), and/or foreign

currency (as described in Sections 2(c)(2)(B) and

2(c)(2)(C)(i) of the Act as amended by the CRA, to be

codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex

contracts") for their own personal account or for any account

in which they have a direct or indirect interest;

4. having any commodity futures, options on commodity

futures, commodity options, and/or forex contracts traded on

their behalf;

5. controlling or directing the trading for or on behalf of any

other person or entity, whether by power of attorney or

otherwise, in any account involving commodity futures,

options on commodity futures, commodity options, and/or

forex contracts;

6. soliciting, receiving, or accepting any funds from any person

for the purpose of purchasing or selling any commodity

futures, options on commodity futures, commodity options,

and/or forex contracts;

7. applying for registration or claiming exemption from

registration with the Commission in any capacity, and

engaging in any activity requiring such registration or

exemption from registration with the Commission, except as

provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9)

(2009);

8. acting as a principal (as that term is defined in Regulation

3.1(a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer

or employee of any person registered, exempted from

registration or required to be registered with the

Commission, except as provided for in Regulation

4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009);

d) an order directing the Defendants to disgorge, pursuant to such

procedure as the Court may order, all ill-gotten gains and/or

benefits received from the acts or practices that constitute

violations of the Act, as described herein, and interest thereon from

the date of such violations;

e) an order directing the Defendants to make full restitution,

including post-judgment interest, to every client whose funds were

received as a result of acts and practices that constituted violations

of the Act, described herein, and interest thereon from the date of such violations;

f) an order directing the Defendants to each pay a civil monetary penalty of not more than the higher of $140,000 for each violation of the Act committed on or after October 23, 2008, or $130,000 for each violation of the Act occurring between October 23, 2004 and October 22, 2008 or triple the monetary gain to the Defendants, plus post-judgment interest;

g) Enter an order of preliminary injunction restraining Defendants and all persons insofar as they are acting in the capacity of Defendants' agents, servants, successors, employees, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with them who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

   (aa)   Destroying, mutilating, erasing, altering, concealing, or disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or business finances of Defendants;  and

   (bb)   Transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise

disposing of any assets, held by, under the control, or in the name of any of the Defendants wherever located including assets held outside the United States.

h) Enter an order of preliminary injunction that Defendants shall immediately deliver over to a Temporary Receiver or Monitor possession, custody and/or title of all assets owned beneficially or otherwise, wherever situated of Defendants and information identifying the accounts, employees properties, or other assets or obligations of Defendants;

i) Enter an order of preliminary injunction directing that Defendants and any successors and/or agents thereof, provide the Commission and the Temporary Receiver or Monitor immediate and continuing access to their books, records, and other documents of Defendants, agents of the Defendants, including, but not limited to, paper documents, electronically stored data, tape recordings, and computer discs, wherever they may be situated and whether they are in the possession of Defendants or others, and to copy said documents, data and records, either on or off the premises where they may be situated;

j) Enter an order of preliminary injunction directing that Defendants make an accounting to the Commission and the Temporary Receiver or Monitor of all of their funds, documents and assets exceeding $250 in fair market value individually, both within and outside the United States which are (1) titled in the name individually or jointly of Defendants; (2) held by any person or entity, for the benefit of Defendants; or (3) under such Defendants' direct or indirect control whether jointly or singly;

k) Enter an order of preliminary injunction providing for the appointment of a Temporary Receiver or Monitor;

l) an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

m) such other and further remedial ancillary relief as the Court may deem appropriate.

Dated this 15th day of March, 2010

Respectfully Submitted,

_____

Elizabeth C. Brennan
Steven I. Ringer

22

Commodity Futures Trading
Commission
140 Broadway, 19th floor
New York, NY 10005
Tel: (646)746-9747 (Brennan)
Tel: (6460 746-9760 (Ringer)
Fax: (646) 746-9939
ebrennan@cftc.gov
sringer@cftc.gov


Florence T. Nakakuni (2286)
UNITED STATES ATTORNEY
District of Hawaii
__Derrick Watson (Cal. Bar. No.
‾154427)
Assistant U.S. Attorney
300 Ala Moana Boulevard
PJKK Federal Building, Room 6-100
Honolulu, HI 96850
Tel: (808) 541-9200
Fax: (808) 541-3752
Derrick.Watson@usdoj.gov