IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) CIVIL NO. 10-00144 SOM-RLP |
| Plaintiff, | ) FINDINGS AND RECOMMENDATION TO ) GRANT PLAINTIFF'S MOTION FOR ) ENTRY OF JUDGMENT BY DEFAULT |
| vs. | ) AND RELIEF INCLUDING A ) PERMANENT INJUNCTION, CIVIL ) MONETARY PENALTY AND OTHER |
| PATRICK RAKOTONANAHARY and CYBER MARKET GROUP, LLC, | ) EQUITABLE RELIEF AGAINST ) DEFENDANT CYBER MARKET GROUP, ) LLC |
| Defendants. | ) ) |
| _____ | ) |

FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR ENTRY
OF JUDGMENT BY DEFAULT AND RELIEF INCLUDING A PERMANENT
INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF
AGAINST DEFENDANT CYBER MARKET GROUP, LLC[1]

Before the Court is Plaintiff U.S. Commodity Futures

Trading Commission's ("Plaintiff" or the "Commission") Motion for

Entry of Judgment by Default and Relief Including a Permanent

Injunction, Civil Monetary Penalty and Other Equitable Relief

Against Defendant Cyber Market Group, LLC ("Cyber"), filed on

July 26, 2011 ("Motion"). See ECF No. 44. Defendant Patrick

Rakotonanahary ("Rakotonanahary"), the alleged President and

_____

[1] Within fourteen (14) days after a party is served with a
copy of the Findings and Recommendation, that party may, pursuant
to 28 U.S.C. § 636(b)(1)(B), file written objections in the
United States District Court. A party must file any objections
within the fourteen-day period allowed if that party wants to
have appellate review of the Findings and Recommendation. If no
objections are filed, no appellate review will be allowed.

Chief Executive Officer of Cyber, was served with a copy of the Motion but did not file an opposition.

On July 27, 2011, the Court found this matter suitable for disposition without a hearing pursuant to Local Rule 7.2(d) of the Local Rules of Practice for the United States District Court for the District of Hawaii.  See ECF No. 46.  Based on the following, and after careful consideration of the Motion, the supporting memorandum, declaration, and exhibits attached thereto, and the record established in this action, the Court FINDS AND RECOMMENDS that the Motion be GRANTED.

<u>BACKGROUND</u>

On March 15, 2010, Plaintiff filed the Complaint in this action against Rakotonanahary and Cyber (collectively "Defendants").  <u>See</u> ECF No. 1.  The Complaint alleges that the Commission is an independent federal regulatory agency that is charged by Congress with responsibility for administering and enforcing the provisions of the Commodity Exchange Act (the "Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. §§ 1 et seq. (2006), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 et seq. (2009).  Cyber is allegedly a Florida limited liability company, formed in January 2005 and actively registered to do

2

business in Florida.  Rakotonanahary is an individual who maintains an address in Punta Gorda, Florida, and as previously stated, holds himself out as the President and Chief Executive Officer of Cyber.

Defendants were charged with fraudulently soliciting and receiving funds from clients for the purpose of trading off-exchange foreign currency contracts ("forex").  Defendants were further charged with making and delivering false statements to Cyber's clients.  By this conduct, Defendants were charged with violating Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C).  Rakotonanahary was further charged, as a controlling person of Cyber, with Cyber's violations of the Act pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006).  In addition, Cyber was charged, as Rakotonanahary's principal, with Rakotonanahary's violations of the Act pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2009).  As relief, Plaintiff sought, among other things, a permanent injunction against Defendants, restitution, and a civil monetary penalty.

On April 12, 2010, copies of the Summons and Complaint were properly served upon Defendants pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure ("FRCP"), and proof of such service was filed with the Court on April 21, 2010.  See ECF No. 6.  On May 7, 2010, the Court granted an extension of time to

Defendants to file Answers to the Complaint and also cautioned that "Cyber Market cannot represent itself pro se because it is a legal entity." See ECF No. 14, at 2. Pursuant to a Consent Order of Preliminary Injunction Against Defendant Patrick Rakotonanahary, dated June 1, 2010, this matter was stayed pending the resolution of the United States' parallel criminal action against Rakotonanahary, United States v. Rakotonanahary, Criminal No. 10-00087 JMS (D. Haw. Mar. 10, 2010). See ECF No. 21. On September 7, 2010, Rakotonanahary pled guilty to three counts of wire fraud in violation of 18 U.S.C. § 1343. See ECF No. 44-8.

Subsequent to the resolution of Rakotonanahary's criminal matter, on March 23, 2011, the Court granted the Commission's motion to lift the stay in the instant matter and provided Cyber until April 13, 2011 to file an Answer. See ECF No. 28. On April 11, 2011, this Court extended Cyber's time to file an Answer until May 18, 2011. See ECF No. 31. Cyber failed to timely file its Answer.

On May 24, 2011, Plaintiff served Defendants and filed with the Clerk of the Court a proposed Certificate of Default as to Cyber ("Certificate of Default") along with a Motion to Enter the Certificate of Default and a Declaration in Support of the Certificate of Default. See ECF No. 37. On May 25, 2011, the Clerk of the Court issued the Certificate of Default as to Cyber for failing to appear, answer the Complaint or otherwise plead to

4

the Complaint within the time required by law.  <u>See</u> ECF No. 39.

Pursuant to a Consent Order of Permanent Injunction and Other

Equitable Relief Against Defendant Rakotonanahary, dated July 1,

2011, Rakotonanahary consented to a permanent injunction against

him as well as to a civil monetary penalty in the amount of

$500,000 plus post-judgment interest.  <u>See</u> ECF No. 42.  The

instant Motion followed.

LEGAL STANDARD

Default may be entered by the clerk if the defendant

has "failed to plead or otherwise defend" within the permitted

time.  Fed. R. Civ. P. 55(a).  Under FRCP 55(b)(1), the clerk of

the Court may enter default judgment for the plaintiff if the

defendant has defaulted by failing to appear and plaintiff's

claim is for a "sum certain or for a sum which can by computation

be made certain[.]"  Fed. R. Civ. P. 55(b)(1).  In all other

cases, the plaintiff must apply to the court for default

judgment.  Fed. R. Civ. P. 55(b)(2).

The grant or denial of a motion for the entry of

default judgment is within the discretion of the court.  <u>Haw.</u>

<u>Carpenters' Trust Funds v. Stone</u>, 794 F.2d 508, 511-12 (9th Cir.

1986).  However, default judgments are ordinarily disfavored, and

cases should be decided upon their merits wherever reasonably

possible.  <u>Eitel v. McCool</u>, 782 F.2d 1470, 1472 (9th Cir. 1986).

Thus, entry of default does not entitle the non-defaulting party

5

to a default judgment as a matter of right. <u>Valley Oak Credit Union v. Villegas</u>, 132 B.R. 742, 746 (9th Cir. 1991).

The Ninth Circuit has indicated that a court should consider the following factors in exercising its discretion as to the entry of a default judgment:

> (1)  the possibility of prejudice to the plaintiff;
>
> (2)  the merits of the plaintiff's substantive claim;
>
> (3)  the sufficiency of the complaint;
>
> (4)  the sum of money at stake in the action;
>
> (5)  the possibility of a dispute concerning material facts;
>
> (6)  whether the default was due to excusable neglect; and
>
> (7)  the strong policy underlying the FRCP favoring decisions on the merits.

<u>Eitel</u>, 782 F.2d at 1471-72.

Upon default, the general rule of law is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting <u>Geddes v. United Fin. Grp.</u>, 559 F.2d 557, 560 (9th Cir. 1977)). Under this standard, the well-pled allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which she is entitled. <u>Fair Hous. of</u>

<u>Marin v. Combs</u>, 285 F.3d 899, 906 (9th Cir. 2002). Furthermore, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." <u>Cripps v. Life Ins. Co. of N. Am.</u>, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978)). A default judgment can be entered without a hearing if the "amount claimed is a liquidated sum or capable of mathematical calculation." <u>Davis v. Fendler</u>, 650 F.2d 1154, 1161 (9th Cir. 1981).

ANALYSIS

**A. Jurisdiction**

As a preliminary matter, this Court has an affirmative obligation to determine whether or not it has jurisdiction over both the subject matter of this action as well as the defendant. <u>See</u> <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

**1. Court's Jurisdiction**

This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such

person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.  Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), in that Cyber transacted business in this District, and certain of the transactions, acts, practices, and courses of business in violation of the Act occurred within this District.

As a result of these transactions, acts, practices, and courses of business by Cyber, this Court also has personal jurisdiction over Cyber.  See  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 315 (1945)) (holding that due process permits the exercise of personal jurisdiction where a defendant has "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice").

### 2.   Commission's Jurisdiction

Under Section 2(c)(2)(C) of the Act, as amended by the CRA, 7 U.S.C. § 2(c)(2)(C), the Commission has jurisdiction over defendants' forex transactions if three criteria are met: (1) the transactions are offered or entered into (i) with a person that is not an eligible contract participant and (ii) on a leveraged or margined basis or financed by the offeror, counterparty, or

person acting in concert with either; (2) the transactions do not result in actual delivery within two days or otherwise create an enforceable obligation to make/take delivery in connection with the parties' line of business; and (3) neither the counterparty to the transactions nor the defendants charged pursuant to this section is one of certain enumerated persons. Based on the well-pled allegations contained in the Complaint, the Court finds that all three criteria are met in this case.

**B.    *Eitel* Factors**

Following a determination that jurisdiction is proper, the Court must consider whether default judgment is appropriate under the Eitel factors outlined above. The Court will address each factor in turn.

**1.    Factor One: The Possibility of Prejudice to Plaintiff**

The first factor set forth by the Ninth Circuit in Eitel considers whether the plaintiff would suffer prejudice if default judgment is not entered. See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, absent entry of default judgment, Plaintiff would be without another recourse for recovery against Cyber. Accordingly, the first Eitel factor favors the entry of default judgment.

**2.    Factors Two and Three: Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint**

The Court considers the merits of Plaintiff's substantive claims and the sufficiency of the Complaint together because of the relatedness of the two inquiries. For these factors, the Court must determine whether the allegations in the Complaint are sufficient to state a claim that supports the relief sought. <u>Danning</u>, 572 F.2d at 1388.

In its Complaint, the Commission asserts one count against Cyber: violations of Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, 7 U.S.C. §§ 6b(a)(2)(A)-(C). These sections make it unlawful

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of section 5a(g), that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person.

Section 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, applies to Defendants' forex transactions, agreements or

contracts pursuant to Section 2(c)(2)(C)(iv) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iv).

By the conduct described in the Complaint, Cyber cheated or defrauded or attempted to cheat or defraud other persons and willfully deceived or attempted to deceive other persons in connection with the offering of, or entering into the margined or leveraged foreign currency transactions alleged herein, for or on behalf of such persons, by: 1) fraudulently soliciting prospective and existing clients; 2) making material misrepresentations and omissions, including but not limited to, promising weekly and/or monthly returns of from 4 to 10% knowing that it lacked the funds to make these payments, falsely representing to clients that these returns were based on profitable forex trading, failing to inform clients that their returns were paid from the client's own funds and/or the funds deposited by other clients, falsely claiming that Defendants had not lost money trading forex in seven years, and failing to adequately disclose the risks of trading forex; and 3) by knowingly providing clients fraudulent statements that misrepresented the balance of clients' funds. Accordingly, by these actions, Cyber violated Section 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, 7 U.S.C. § 6b(a)(2)(A)-(C).

Defendants engaged in the acts and practices described above knowingly, willfully and/or with reckless disregard for the

truth. Rakotonanahary was acting as an agent of Cyber when he violated the Act, and, therefore, Cyber, as Rakotonanahary's principal, is liable for Rakotonanahary's acts constituting violations of the Act pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2009), which impose liability on principals for the acts, omissions, and failures of their agents acting within the scope of their agency. Therefore, the Court finds that the second and third <u>Eitel</u> factors favor the entry of default judgment as to the sole count of Plaintiff's Complaint.

### 3. Factor Four: Sum of Money at Stake

Under the fourth <u>Eitel</u> factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177. In this case, in addition to injunctive relief, Plaintiff seeks a significant amount of damages, i.e., a $500,000 civil monetary penalty. However, Plaintiff's damages request is tailored to the amount of specific misappropriated gains by Rakotonanahary, the principal of Cyber. Under these circumstances, the Court concludes that this factor favors the entry of default judgment.

### 4. Factor Five: Possibility of Dispute Concerning Material Facts

As to the fifth <u>Eitel</u> factor, as previously stated, upon entry of default, the well-pled factual allegations of the complaint, except those relating to the amount of damages, will

be taken as true.  <u>TeleVideo Sys., Inc.</u>, 826 F.2d at 917-18.
Cyber has been given a fair amount of time to answer the
Complaint and deny that it violated Section 4b(a)(2)(A)-(C) of
the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C); Cyber, however, has not
done so.  Indeed, Rakotonanahary, the President and Chief
Executive Officer of Cyber, pled guilty and admitted his wrongful
conduct in a parallel criminal proceeding for the very same
conduct alleged in the instant Complaint.  Because no dispute has
been raised regarding Plaintiff's material factual allegations,
the Court finds that this factor favors the entry of default
judgment.

**5.    Factor Six: Whether Default was Due to Excusable
        Neglect**

Upon review of the record, the Court finds that Cyber's
default was not the result of excusable neglect.  Plaintiff
personally served Cyber with copies of the Summons and Complaint
in this matter on April 12, 2010, and proof of such service was
filed with the Court on April 21, 2010.  Cyber received two
extensions of time by the Court to file an Answer to the
Complaint and was advised that, as a legal entity, it could not
represent itself pro se.

Despite ample notice of this lawsuit and Plaintiff's
intention to seek a default judgment,[2] Cyber has not appeared in

_____

[2]  At a status conference on May 23, 2011, Rakotonanahary
was informed by Plaintiff's counsel that Plaintiff intended to

13

this matter to date.  Thus, the record suggests that Cyber's default was not the result of any excusable neglect, but rather due to Cyber's conscious and willful decision not to defend this action.  Consequently, this factor favors the entry of default judgment.

**6.    Factor Seven: Policy Favoring Decisions on the Merits**

The Court next turns to the seventh and final <u>Eitel</u> factor.  Cyber's failure to answer Plaintiff's Complaint makes a decision on the merits impractical, if not impossible.  Under FRCP 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." <u>PepsiCo., Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Philip Morris USA, Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh <u>Eitel</u> factor is not alone dispositive").  In this present case, Cyber has likewise failed to defend this action and has consequently rendered adjudication on the merits before this Court impracticable, if not impossible.  Therefore, the seventh <u>Eitel</u> factor does not preclude this Court from entering default judgment against Cyber.

**7.    Totality of *Eitel* Factors**

---

file a motion for default judgment against Cyber.  <u>See</u> ECF No. 36.

14

Upon consideration of the foregoing <u>Eitel</u> factors, the Court finds that, as a whole, these factors weigh in favor of entering default judgment in Plaintiff's favor and against Cyber as to the sole count of the Complaint: violations of Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, 7 U.S.C. §§ 6b(a)(2)(A)-(C).

## C. Damages and Relief Sought

### 1. Permanent Injunction

Plaintiff is seeking a permanent injunction enjoining Cyber, its officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with Cyber from committing future violations of the Act and the Commission's regulations. "Pursuant to section 6c of the Commodity Exchange Act, 7 U.S.C. § 13a-1, the [Commission] is authorized to institute an action seeking injunctive relief whenever it appears that any person 'has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of this Act or any rule, regulation, or order thereunder.'" <u>CFTC v. Hunt</u>, 591 F.2d 1211, 1219 (7th Cir. 1979). Once a violation is demonstrated, the Commission need only show that there is some reasonable likelihood of future violations in order to justify injunctive relief. <u>Id.</u> at 1220.

While past misconduct does not necessarily lead to the conclusion that there is a likelihood of future misconduct, it is

"highly suggestive of the likelihood of future violations." Id.

(quoting SEC v. Mmgt. Dynamics, Inc., 515 F.2d 801, 807 (2d Cir.

1975)). Factors to be considered by the court in making this

determination include: "the egregiousness of the defendant's

actions, the isolated or recurrent nature of the infraction, the

degree of scienter involved, the sincerity of the defendant's

assurances against future violations, the defendant's recognition

of the wrongful nature of his conduct, and the likelihood that

the defendant's occupation will present opportunities for future

violations." SEC v. Ginsburg, 362 F.3d 1292 (11th Cir. 2004)

(citations omitted).

Here, Plaintiff alleges that Cyber, both directly and

through its agent Rakotonanahary, engaged in a systematic pattern

of questionable conduct by participating in a scheme to defraud

investors. In support of the imposition of a permanent

injunction, Plaintiff points primarily to Rakotonanahary's guilty

plea in the parallel criminal proceeding. In the plea

proceedings, Rakotonanahary admitted that he owned and controlled

Cyber and that he used Cyber to fraudulently solicit investors to

invest their funds with Cyber in order to buy and sell forex

contracts. See Tr. Proceedings, ECF No. 44-7, at 35-42.

Rakotonanahary further admitted that instead of investing those

funds as promised, he defrauded investors by making false

representations to investors, misappropriating funds, and

distributing false statements.  See id.  Additionally, there is

no evidence before the Court that Cyber has made assurances

against future violations.  Accordingly, the Court finds and

recommends that Cyber be permanently enjoined from committing any

future violations of the Act or of the Commission's regulations,

either directly or indirectly.

> **2.    Civil Monetary Penalty**

Plaintiff also seeks the imposition of a civil monetary

penalty against Cyber.  Section 6c(d)(1) of the Act, 7 U.S.C. §

13a-1(d)(1), permits the district court to impose on a person who

is found to have violated the Act, a civil monetary penalty of

not more than the greater of $100,000 or triple the monetary gain

to the person for each violation.

Specifically, Plaintiff requests a civil monetary

penalty in the amount of $500,000 plus post-judgment interest,

which is the amount Rakotonanahary agreed to pay to the

Commission as a civil monetary penalty in the Consent Order of

Permanent Injunction and Other Equitable Relief Against Defendant

Rakotonanahary, filed on July 1, 2011.  See ECF No. 42, at 18.

Indeed, Philip D. Rix, a Futures Trading Investigator of the

Commission, analyzed all relevant bank and trading records

gathered during the Commission's investigation of Rakotonanahary

and Cyber, and concluded that Rakotonanahary misappropriated

Cyber client funds by, in part, using such funds for personal

expenses without clients' authorization to do so.  <u>See</u> Rix Decl.,
ECF No. 44-2, ¶ 9.  Mr. Rix further determined that
Rakotonanahary withdrew funds from Cyber's bank account totaling
approximately $472,970, which were then used for his own
purposes.  <u>See</u> <u>id.</u>  Based on this evidence and pursuant to
section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1), the Court
finds and recommends that a civil monetary penalty in the amount
of $500,000 be assessed against Cyber.

<u>CONCLUSION</u>

In accordance with the foregoing, the Court FINDS and
RECOMMENDS that Plaintiff's Motion for Entry of Judgment by
Default and Relief Including a Permanent Injunction, Civil
Monetary Penalty and Other Equitable Relief Against Defendant
Cyber Market Group, LLC, filed July 26, 2011, be GRANTED as
follows:

**A.    Permanent Injunction**

1.    Cyber, its officers, agents, servants, employees,
attorneys, and other persons who are in active concert or
participation with Cyber are permanently restrained, enjoined and
prohibited from, directly or indirectly, in or in connection with
any order to make, or the making of, any contract of sale of any
commodity for future delivery, or swap, that is made, or to be
made, for or on behalf of, or with, any other person, other than
on or subject to the rules of a designated contract market – (A)

cheating or defrauding or attempting to cheat or defraud the other person; (B) willfully making or causing to be made to the other person any false report or statement or willfully entering or causing to be entered for the other person any false record; or (C) willfully deceiving or attempting to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or with the other person in violation of Section 4b(a)(2)(A)-(C) of the Act, as amended by the CRA and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§701-774, 124 Stat. 1376 (enacted July 21, 2010), to be codified at 7 U.S.C. § 6b(a)(2)(A)-(C).

2.    Cyber, its officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with Cyber, are further permanently restrained, enjoined and prohibited from, directly or indirectly:

a)    trading on or subject to the rules of any registered entity, as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a;

b)    applying for registration or claiming an exemption from registration with the Commission in any capacity, and from engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011);

19

c) acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent, officer or employee of any person (as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a) registered, required to be registered, or exempted from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R § 4.14(a)(9) (2011);

d) entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1)) ("commodity options"), and/or forex currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for its own personal account or for any account in which it has a direct or indirect interest;

e) having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on its behalf;

f) controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts; and/or

g) soliciting, receiving, or accepting any funds from any person for purposes of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts.

3. The injunctive provisions of this Order shall be binding upon Cyber, upon any person who acts in the capacity of officer, agent, servant, employee, attorney, successor and/or assign of Cyber and upon any person who receives actual notice of

this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Cyber.

**B.  Civil Monetary Penalty**

1.  Cyber shall pay to the Commission a civil monetary penalty ("CMP") in the amount of $500,000 plus post-judgment interest.  Post-judgment interest shall accrue on the CMP beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

2.  Cyber shall pay its CMP by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> Attn:  Linda Zurhorst – AMZ-341
> DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-5644

If payment is to be made by electronic funds transfer, Cyber shall contact Linda Zurhorst or her successor at the above address to receive payment instructions and shall fully comply with those instructions.  Cyber shall accompany payment of its CMP with a cover letter that identifies Cyber and the name and

docket number of this proceeding.  Cyber shall simultaneously transmit copies of the cover letter and the form of payment to: (a) the Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1151 21st Street, NW, Washington, DC 20581; and (b) the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

3.    Any acceptance by the Commission of partial payment from Cyber of its CMP shall not be deemed a waiver of Cyber's obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment from Cyber of any remaining balance.

4.    The equitable relief provisions of this Order shall be binding upon Cyber and any person who is acting in the capacity of officer, agent, servant, employee, or attorney of Cyber, and any person acting in active concert or participation with Cyber who receives actual notice of this Order by personal service or otherwise.

**C.    Service of Findings and Recommendation and Notices**

1.    Copies of this Order shall be served and all notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

> Notice to Commission:
>
> Division of Enforcement
> U.S. Commodity Futures Trading Commission
> 140 Broadway, 19th Floor
> New York, NY 10005

Notice to Cyber and Rakotonanahary:

Patrick Rakotonanahary, Register # 34881-018
CI McRae
Correctional Institution
P.O. Drawer 30
McRae, GA 31055

    2.    All such notices to the Commission shall reference the name and docket number of this action.

**D.   Continuing Jurisdiction**

    This Court shall retain jurisdiction over this action to implement and carry out the terms of this Order, to ensure compliance with this Order, and for all other purposes related to this action.

    IT IS SO FOUND AND RECOMMENDED.

    DATED: HONOLULU, HAWAII, SEPTEMBER 28, 2011.

_____
Richard L. Puglisi
United States Magistrate Judge

U.S. COMMODITY FUTURES TRADING COMM'N V. RAKOTONANAHARY ET AL.; CIVIL NO. 10-00144 SOM-RLP; FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT BY DEFAULT AND RELIEF INCLUDING A PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST CYBER MARKET GROUP, LLC